Good morning and welcome to the Ninth Circuit. My colleague Judge Berzon and I welcome Judge Lefkoe from Chicago who is joining us and we both thank Judge Lefkoe for sitting with our court. It would be very difficult for us to do our jobs if we didn't have judges like Judge Lefkoe who helped us out on hearing cases. So we have, I believe, just one case that has been submitted on the briefs. Santiago-Mendoza v. Bondi is submitted. We have four cases on the argument calendar. It's possible that we may take a break in the middle. We don't know yet. We'll let you know. The first case on the argument calendar is Blandon Gonzalez v. Bondi. Counsel, whenever you're ready. May it please the Court. Siobhan Ayala on behalf of Mr. Blandon Gonzalez. Good morning. There are two issues in this case. I think the most pressing issues before the court. The first is if the judge did enough to develop the record for this pro se petitioner. There was technical issues in the court that morning and the petitioner was asked questions regarding credibility. There was two issues primarily with credibility. Are you talking about the immigration judge? Yes. Yes. The immigration identified just the inconsistencies. Well, this was also identified by the asylum office inconsistencies regarding where the petitioner went after he went to protest in 2018. And then there was the concern about the lack of detail regarding his time when he was in hiding. I think it's important to remember that this petitioner was only 15 or 16 years old when these events started happening. He went to the protest at the request of his brother and he then went to a flurry of places and eventually landed in hiding for two and a half years. Yes. The asylum officer concluded at the very end on, I think, 66 considering the lack of credibility. There is no non-testimonial evidence that establishes a reasonable possibility of persecution or torture. The I.J. agreed. Do you concede that if that finding is correct, then we have to deny the petition because a reasonable adjudicator could have come out the same way the I.J. did? Yes, I do concede that, Your Honor. However, I don't believe that a reasonable adjudicator could come up with that conclusion. I mean, the fact that there is lack of detail, he talks about the fact that he was in hiding and he wasn't probed more than just repeating himself. And then he said his aunt cooked for him while he was in hiding. And then when asked about it by the immigration judge, he responded that he then went to his mother's house, who then died. So we're talking about a petitioner who has suffered multiple losses at a very young age and is having a difficult time expressing themselves to the immigration judge and the asylum office. The difficulty at expressing themselves was most prominent during the first part of the asylum interview, which was halted when he couldn't continue. And then at the second time, he again had some problems. But he wanted a new he wanted continuance. The asylum officer who probably didn't have to give him a continuance did. Yes. And so he got what he had asked for there so he could present at a different time. That's right, Your Honor. It's very hard to figure out. One of the problems here is that he had a lawyer on hand, apparently, at the time of the second asylum officer interview, and he didn't want to wait a half hour for the lawyer. So I understand that he may have been reasons he made bad decisions, but he didn't have a lawyer. And then when he came to the IJ hearing, he had a lawyer and he apparently discharged him. Maybe I don't know what happened there, but the lawyer withdrew with his acquiescence. So he was on his own, but not because he hadn't been given plenty of opportunity to have a lawyer. Yes, that's right, Your Honor. But the judge, because he is a pro se petitioner, the judge still does have a duty to advise him and probe more than a person who's represented by counsel, even even though I do concede he did have the opportunity to obtain counsel and he was not able to. Well, no, that isn't what happened. He had a lawyer both times. And at the time of the asylum officer hearing, he was said, do you want to wait a half hour and your lawyer will be available? And he said, no. Right. You're right, Your Honor. But he didn't have a lawyer present during the interview who could summarize or ask additional questions. He didn't have a lawyer present at the IJ interview who could summarize or ask additional questions. Yeah. But I mean, when I'm looking also at what the IJ did, because this is credibility, the IJ went through AR 11 and following. He went through some of the things with your client that the asylum officer had based the lack of credibility finding on. He gave your client a chance to explain certain things and then he decided to uphold what what the AO did, what in terms of either law or the Constitution, I'm having trouble seeing what was wrong with what the IJ did here. Well, I think the IJ, he did probe. I think he could have probed more. And whether or not the court finds that the IJ sufficiently probed into the issue of credibility, I think that the petitioner sufficiently responded and provided information that would make a reasonable adjudicator find that he was credible. Well, but again, that's not the standard. I mean, you may be right. A reasonable adjudicator on these same facts may well have found your client credible. But the standard is we have to deny the petition unless no reasonable adjudicator could come out the same way the IJ did. Well, Your Honor, I think under Baratoren Melendez, the issue is whether there's substantial evidence regarding credibility. That's my understanding of the standard. I'm going to leave some time for. All right. Thank you. All right. We'll hear from the government. Good morning, Your Honors. May it please the court. You know, I'll use it for the government. The petition for review should be denied and I'll proceed to address a couple of issues that were just discussed, particularly the credibility determination before that determination by the agency, by the asylum officer and then concurred with by the immigration judge. Any challenge to that was waived by the petitioner because they did not challenge that in their opening brief. They made references to the credibility and attempted to say excuse it. But as presented here that the individual was 16 years old when the proceedings happened, but they've raised no specific challenges to the inconsistencies relied inconsistency relied on by the IJ, as well as the lack of detail that was relied on. This is a strange process because you have the asylum officer interview. You have a transcript. It's not a transcript. It's just some notes. Basically, it's not not a verbatim transcript. And then you go to the IJ and the IJ is supposedly doing an appeal, but also can hear evidence. And it's not I would like some help about what's supposed to be going on here, because I mean, for example, he said, Mr. Blanton Gonzalez said, I have some a couple of times I have some pictures that I'd like to show you if you'll let me corroborate what I'm saying. And I have pictures and evidence of the people that are threatening with threatening to kill me. And the IJ didn't give him an opportunity to present those. Now, should he have done those? That is that is that how the system works? The IJ has a hearing, but it's not really a hearing because he can't present evidence. Well, you're under the regulations that this court is upheld, specifically say the IJ may take additional evidence and also may decline to do so. But that results in a very odd system in which, first of all, appellate bodies don't usually take evidence. Second of all, to make a discretionary. It means that they're the person who's the putative appellee really doesn't know how to proceed. The problem seemed to be that they said he's not credible. He says, I have evidence that will show that will bolster why I'm correct. Why doesn't he get to present that evidence? I think it's the nature of the proceedings that the petitioner is in. This is meant to be a streamlined process. I understand that. But I understand that. But on the other hand, the the regulations don't are not at all firm about the notion that this is that the IJ is actually just appellate. I mean, if he can take evidence, presumably he can make findings based on the evidence. That's true, Your Honor. But immigration does not have to take evidence. The regulations do not require it. So you just have IJs who could do whatever they want. But this court has reviewed the regulations and understood the purposes of these regulations, that this was meant to be a streamlined process that's meant to fulfill the kind of two competing interests, which was Congress's intent to have expedited proceedings for individuals subject to reinstated orders. And so we therefore have a lawless system where the IJs could do whatever they want. I wouldn't call it lawless, Your Honor. I think the IJs here, for example, the IJ in this case, as Judge Bennett noted, was discussing the case that raised the inconsistencies to the petitioner. The IJ didn't necessarily have to take this additional testimony, but he did and addressed, gave the petitioner the opportunity to address these inconsistencies. And the petitioner did not do so. And again, the IJ does take evidence and what he makes findings of that. I think it is it is an odd posture in these situations. I take I take your meaning, Judge Berzon. It does seem that an appellate review, it's a fact finding in an appellate capacity. But that is the nature of these proceedings. These are entirely like regular creation, creation of regulation. So and again, the court has approved the approach to understanding why these proceedings are made. In a situation in which the person walks in, says, I want to present some evidence and the IJ has some questions, but won't let him present the cooperating evidence he wants to present. Well, Your Honor, a couple of things to that in this specific situation. One is I do I do believe the IJ is not required to take that and take that additional evidence to petitioner ever raised this issue. I would deem that issue waived. They never pointed out in their brief to say that my client attempted to show evidence, but it was rejected. And then three, even if that you're probably right about, but that's what jumped out on me. The guy says I want to present something and the the IJ just ignores. I understand you are. But then also, if they were going to view that as a problem, then where's the prejudice here? The petitioner hasn't shown what this evidence was, how it altered the outcome of proceedings. Well, I mean, also the petitioner said, for example, I have pictures of my friend's house and and, you know, the IJ didn't ask him to show the pictures of the friend's house. But the IJ, I take it as the government's position is it has the discretion as to what to look at and what not to look at. And if the IJ felt that pictures of the friend's house weren't relevant, he didn't have to look at him. I believe that that's correct. That is our position. I believe that's right. It's essentially the IJ is saying, but he also said, I have pictures and evidence of the people that are threatening me. That's ready to kill me. So that's more. He had more than the friend's house or he said he did. I mean, nobody asked him what he had. That's right, Your Honor. Again, I think it just does fall within the immigration judge's discretion. But also there is the issue of the credibility determination that was waived by the petitioner here. And that is a dispositive determination based on the fact that petitioner has to present a credible claim for the asylum officer and immigration justice say, oh, OK, that's a that establishes reasonable possibility of persecution or torture. Petitioner didn't meet that very, very minimum threshold of showing presenting that credible claim. Petitioner waived any challenge to that by failing to raise it in their opening brief. And I believe here the immigration judge conducted the proceedings in a manner that was that afforded the petitioner the due process to which he was entitled in this reinstated proceeding, which is meant to be a streamlined process and not a flight of evidentiary hearing of as typical of removal proceedings. And so we believe that the petition for review was it should be denied here. How should how how do you say that that the applicant didn't at least show a 10 percent chance that he would be persecuted or tortured? I mean, that's a very low standard to allow him to go forward and with an application for asylum. Yes, your honor, it is a low standard. And I think that as this court is kind of understood what establishing, for example, a reasonable possibility of persecution, it's your it is a subjective and objective component. That subjective component requires a credible claim, credible testimony. So that's the government's position is if there's no credible testimony, then on this record, we stop essentially. Yes, your honor. Because it's what is how can the purpose of these processes is the I think the language is that the government excuse me, the Congress wanted to ferret out frivolous claims. It's a frivolous claim is inherently one that's not credible. And I think that's the kind of the purpose of this process was this asylum officer determined that the petitioner they he wasn't sure what to believe or what what the claim was based on these inconsistencies and lack of detail and determined that they didn't meet that threshold, even the low threshold of your honor notes. And I think that's that's sufficiently disposed of the disposals of the case. But again, there is that issue that this issue was waived entirely because the petitioner, the agencies, the petitioner simply did not raise it. And ultimately, we don't know what happened to this petitioner because of the lack of credibility. And therefore, they did not meet their burden of proof. All right. Thank you. Thank you. We would contest that the issue of credibility is waived. The opening brief actually pretty consistently talks about the credibility and why the petitioner's statements should be taken as true. It was paged, for instance, 20 or 24 talking about the fact that the credibility what it was is the main issue in this case. So we would take issue with the fact that the issue of credibility is waived regarding whether or not that the immigration judge can accept new evidence. This issue has been dealt with in Andrade. And the standard is that whether or not the judge has an abuse of discretion as well as in Dominguez Ojeda. Where did you raise that issue? It was not raised. And I'm just so we can't we can't consider it. Right. Just responding to the your honor's question. It's not raising it in the brief, though. I'm sorry, whether or not the IJ abused his discretion by not taking in the new evidence. Right. And so it wasn't raised. Right. Right. I can't tell you. But right thing to me to be the one jumps out at you. But, yes, it wasn't. Do you have anything else? No. All right. Thank you. All right. We thank counsel for their arguments. And the case just argued is submitted.
judges: BERZON, BENNETT, Lefkow